NBA ENTERTAINMENT,
A DIVISION OF NBA PROPERTIES, INC.
Michelle C. Pujals (MP 0088)
645 Fifth Avenue
New York, New York 10022
(212) 407-8000
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NBA ENTERTAINMENT, a division of NBA PROPERTIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> TOPSPORTS VENTURES S.A. <br><br> Defendant. | 05 CV 7119 (AKH) <br> **ECF Case** <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff NBA Entertainment ("NBAE") for its Complaint against defendant TopSports Ventures S.A. ("TopSports"), alleges as follows:

Nature of This Action

1.  This action arises out of TopSports' breach of its television broadcast agreement with NBAE.

2.  NBAE, a division of NBA Properties, Inc. ("NBAP"), entered into an exclusive Television License Agreement with TopSports (the "License Agreement"), which was effective as of August 5, 2003. Pursuant to the License Agreement, NBAE authorized TopSports, and TopSports undertook the commitment, to telecast in Brazil a minimum of 94

National Basketball Association ("NBA") games during the term of the License Agreement, as well as other NBA-related programming. (Hereafter, the NBA games and NBA-related programming covered by the License Agreement are referred to as the "NBA Programming.") TopSports promised to telecast NBA Programming on the Rede TV channel in Brazil (one of the most widely-distributed channels in the country), to actively promote the telecasts of NBA Programming and to reserve for NBAE certain commercial advertising time during each telecast of NBA Programming, which NBAE, in turn, sells or provides to its global marketing partners and sponsors or uses for its own promotional purposes ("NBAE Commercial Inventory"). In addition, in exchange for the rights it received under the License Agreement, TopSports agreed to pay NBAE a license fee with respect to each season covered by the License Agreement, and to pay all technical costs in connection with the delivery of NBA Programming to TopSports.

3.   During the 2003-04 NBA season, TopSports telecast NBA Programming as required under the License Agreement. However, while TopSports provided NBAE with NBAE Commercial Inventory and paid the license fee for the 2003-04 NBA season, it has not paid NBAE the technical charges payable under the License Agreement for the 2003-04 NBA season.

4.   The valuable terms and unique conditions of the License Agreement with TopSports were critical to the NBA's plans to increase the attractiveness of its professional basketball games to the Brazilian audience, to create goodwill for the NBA and its marketing partners and sponsors in that country, and to execute its global marketing strategy. Nevertheless, in the fall of 2004, NBAE discovered that TopSports intended not to telecast NBA Programming

(including the NBAE Commercial Inventory) on the Rede TV channel (or any comparable replacement channel in Brazil) during the 2004-05 NBA season.

5. Indeed, TopSports did not telecast any NBA Programming or provide NBAE with the NBAE Commercial Inventory during the 2004-05 NBA season. Nor has TopSports paid any of the license fees required by the License Agreement for the 2004-05 NBA season (despite having received written demands to do so).

6. After notifying TopSports in writing that it was in breach of its contractual obligations, and giving TopSports several opportunities to cure its contractual breaches, NBAE, pursuant to Paragraph 13 of the License Agreement, terminated the License Agreement on January 12, 2005.

7. Despite additional requests from NBAE, TopSports has not complied with its obligations under the now-terminated License Agreement and has left NBAE no option other than to commence this action to recover the license fee and technical charges due and owing by virtue of, and the other damages that NBAE has suffered as a result of, TopSports' wrongful and unjustified conduct.

Parties and Jurisdiction

8. Plaintiff NBAE is a division of NBAP, with its principal place of business at 450 Harmon Meadow Boulevard, Secaucus, New Jersey. NBAP is a corporation organized

and existing under the laws of the State of New York, with its principal place of business at 645 Fifth Avenue, New York, New York.

9. Upon information and belief, defendant TopSports is a Brazilian corporation, and its principal place of business is located at Rua Lauro Muller 116, sala 601, Rio de Janeiro RJ, 22290-160, Brazil.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(2) because this action is between a citizen of a State and a citizen or subject of a foreign state and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. TopSports has by express written agreement consented to the personal jurisdiction of this Court and service of process by mail. Without waiving any rights it has under the License Agreement, NBAE also plans to serve a copy of this complaint on TopSports via letters rogatory pursuant to the Inter-American Convention on Letters Rogatory and Additional Protocol.

12. Venue is proper in this district under 28 U.S.C. §1391(a) and (d), and pursuant to the parties' written agreement.

### The License Agreement

13.   The terms of the License Agreement, which covers three NBA seasons, obligated TopSports to telecast in Brazil a minimum of 94 and a maximum of 106 NBA games during the term of the License Agreement as well as other NBA Programming.

14.   In exchange for the valuable rights that it received in the License Agreement, TopSports agreed to:

(a)   pay NBAE license fees of $100,000, $275,000 and $325,000 for the 2003-04 through 2005-06 NBA seasons, respectively, and pay technical costs in connection with the delivery by NBAE of NBA Programming to TopSports during each NBA season covered by the License Agreement;

(b)   telecast a schedule of live or taped NBA games (including NBA Playoffs games, the NBA All-Star Game and the NBA Finals) on dates and times approved in advance by NBAE;

(c)   telecast NBA Programming on a channel that would reach an average of at least 90% or more of television households in Brazil during each season of the Agreement;

(d)   telecast between twenty-seven and thirty-six episodes of "NBA Action" -- a weekly highlight and promotional show focusing on NBA games, players, and events;

(e) actively promote the telecasts of NBA Programming via both print media and tune-in spots. Taken together with subparagraphs (b)-(d), these provisions ensured that NBA Programming would receive the widest possible exposure among the NBA's target audience in Brazil (the "Exposure Obligation"); and

(f) telecast the six (6) minutes of NBAE Commercial Inventory in each telecast of NBA Programming, so that NBAE could sell such inventory to its sponsors and marketing partners, thereby encouraging them to extend their NBA-related marketing programs into Brazil.

15. Pursuant to Paragraph 13 of the License Agreement, NBAE had the right, among other things, to terminate the License Agreement (and accelerate all unpaid amounts due thereunder) in the event TopSports failed to fulfill any of its obligations under the License Agreement, including, without limitation, its payment, telecast and market exposure obligations.

TopSports Fails to Fulfill its Obligations Under the License Agreement

16. TopSports exercised its rights under the License Agreement by telecasting the required NBA Programming during the 2003-04 NBA season. Pursuant to the License Agreement, the $100,000 license fee for that season was to be paid in three installments, and TopSports paid all three installments to NBAE.

17. Pursuant to the License Agreement, TopSports was obligated to pay NBAE for all technical charges in connection with the delivery of NBA Programming to

TopSports during the 2003-04 NBA season. During the 2003-04 NBA season, technical charges in connection with the delivery of NBA Programming to TopSports totaled $48,700.00. An invoice for technical charges of $6,250.00 was sent to TopSports on or about June 28, 2004. Two invoices for technical charges of $34,350.00 and $8,100.00 were sent to TopSports on or about August 31, 2004. The payment of the invoice sent on June 28, 2004 was due on July 28, 2004. Payment of the two invoices sent on August 31, 2004 was due on September 30, 2004. None of these invoices has been paid.

18. In late September or early October, 2004, TopSports notified NBAE that they had ended their contractual relationship with Rede TV, one of the major national networks in Brazil with demographics favorable to NBAE, and over which TopSports distributed NBA Programming during the 2003-04 NBA season in satisfaction of its Exposure Obligation. In addition, TopSports failed to secure a replacement telecaster to broadcast the NBA Programming. As a result of TopSports' action (and inaction), NBA Programming did not air on Rede TV (or any other terrestrial channel) in Brazil during the 2004-05 NBA season and TopSports has not complied with the Exposure Obligation. Consequently, NBAE has been deprived of the audience that it had bargained for and lost substantial exposure for the NBA Programming. NBAE is entitled to be compensated for this loss of market exposure, including the value of the goodwill and other financial benefits (including profits) lost as a result.

19. Although TopSports was required to provide NBAE with NBAE Commercial Inventory in each telecast of NBA Programming, it did not do so during the 2004-05 NBA season. The estimated value of the total commercial inventory time that TopSports

failed to provide during the 2004-05 NBA season is in excess of $1,600,000.00. This failure to provide and telecast the allotted NBAE Commercial Inventory prevented NBAE from fulfilling its commitments to its marketing partners and sponsors and damaged NBAE's reputation with those partners and sponsors. Such failure has also adversely affected NBAE's ability to enter into new contracts with these marketing partners and sponsors and prospective partners and sponsors. NBAE is entitled to be compensated for this damage to its reputation and lost business opportunities.

20. NBAE provided notice to TopSports of TopSports's default of its payment obligations under the License Agreement on or about October 28, 2004. In addition, on that date, NBAE notified TopSports that it was also in default of its obligation to secure a replacement telecaster in Brazil acceptable to NBAE in order to comply with the Exposure Obligation for the 2004-05 NBA season.

21. Pursuant to the License Agreement, TopSports was obligated to pay NBAE a $275,000 license fee for the 2004-05 NBA season in two installments of $82,500.00 due on October 30, 2004 and February 13, 2005, and one installment of $100,000 due on May 15, 2005. None of these payments has been made.

22. On or about November 9, 2004, NBAE again notified TopSports that they were in default of their payment and telecast obligations under the License Agreement.

23. On or about January 12, 2005, as a result of TopSports's failure to fulfill its payment and telecast obligations under the License Agreement, NBAE notified TopSports that NBAE was exercising its right to terminate the License Agreement pursuant to Paragraph 13 of the License Agreement.

24. Under Paragraph 13 of the License Agreement, all unpaid license fees under the License Agreement became due on termination. Therefore, TopSports owes NBAE the full license fees of $275,000 for the 2004-05 NBA season and $325,000 for the 2005-06 NBA season as a result of the termination of the License Agreement (such amount, in addition to technical charges for the 2003-04 NBA season, the "Outstanding Fees and Charges").

25. After the termination of the License Agreement, NBAE once again demanded payment of the Outstanding Fees and Charges.

26. After NBAE terminated the License Agreement, NBAE was forced to attempt to locate another television station in Brazil to telecast NBA Programming during the 2004-05 NBA season. After substantial effort and expense, the NBAE was unable to reach an agreement with any other terrestrial telecaster in Brazil. NBAE is entitled to be compensated for the costs associated with its search for a new television licensee and for the loss of market exposure and NBAE Commercial Inventory for the 2004-05 NBA season, including the value of the goodwill and other financial benefits (including profits) lost as a result.

## First Cause of Action

(Breach of Contract)

27. Plaintiff NBAE repeats and realleges the allegations set forth in paragraphs 1 through 26 of the Complaint as though each were fully set forth herein.

28. TopSports has breached the License Agreement by failing to pay the required license fees and technical charges, failing to telecast NBA Programming and NBAE Commercial Inventory, failing to secure a comparable replacement telecaster and failing to cure these defaults.

## Second Cause of Action

(Tortious Interference With Contractual Relations)

29. Plaintiff NBAE repeats and realleges the allegations set forth in paragraphs 1 through 28 of the Complaint as though each were fully set forth herein.

30. NBAE has entered into contractual relations with several companies that are NBAE's worldwide marketing partners and sponsors. TopSports was well aware of these relationships.

31. TopSports was aware that NBAE was planning to sell NBAE Commercial Inventory to these companies during the 2004-05 NBA season.

32.     TopSports knew that by not telecasting the NBAE Commercial Inventory, NBAE would be precluded from providing agreed-upon advertising time and sponsored segments to its partners and sponsors.

33.     TopSports intentionally and unjustifiably interfered with NBAE's performance of its contractual obligations to its marketing partners and sponsors, resulting in, among other things, harm to NBAE's reputation and a loss of goodwill. In addition, TopSports' failure to fulfill its obligations under the License Agreement -- including, without limitation, its telecast, promotion and market exposure obligations -- has resulted in a material adverse effect on NBAE's ability to finalize new contractual relationships with prospective marketing partners and sponsors.

34.     NBAE is entitled to damages for TopSports' interference with NBAE's contractual relationships.

### Prayer for Relief

WHEREFORE, plaintiff NBAE respectfully requests that the Court:

A.      Award NBAE money damages in an amount not less than $648,700.00 for the unpaid license fees and unpaid technical charges lost as a result of TopSports' conduct;

B.      Award NBAE money damages in an amount not less than $1,600,000.00 for the value of the advertising time lost as a result of TopSports' conduct;

C.      Award NBAE money damages for the costs associated with its search for a new Brazilian television licensee for the 2004-05 NBA season, its loss of market exposure

(including lost profits), loss of goodwill, the damage to its reputation incurred as a result of TopSports' conduct and the damage to NBAE's business relationships with prospective partners and sponsors;

        D.      Award NBAE all interest as provided by law, including prejudgment interest;

        E.      Award NBAE attorneys' fees, disbursements and costs; and

        F.      Award NBAE such other and further relief as to this Court shall appear just and proper.

Dated:    New York, New York
             August 10, 2005

                      NBA ENTERTAINMENT,
                      a division of NBA PROPERTIES, INC.

                      by: _____
                      Michelle C. Pujals (MP 0088)

                      Attorneys for Plaintiff
                      NBA Entertainment, a division of
                      NBA Properties, Inc.
                      645 Fifth Avenue
                      New York, New York 10022
                      (212) 407-8000